**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| THOMAS FRANKLIN WOODY, | : | PRISONER CIVIL RIGHTS |
|---|---|---|
| Plaintiff, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:09-CV-0173-RWS-SSC |
| SHERIFF STEVE CRONIC; | : | |
| LIEUTENANT SEYMORE; | : | |
| SERGEANT UNDERWOOD; | : | |
| OFFICER LUNDIS; DOCTOR | : | |
| LINWOOD ZOLLER; and HALL | : | |
| COUNTY, | : | |
| Defendants. | : | |

## ORDER AND OPINION

Plaintiff has submitted the instant *pro se* civil rights complaint and a motion to amend complaint [1 and 16]. The matter is presently before this Court for a 28 U.S.C. § 1915A frivolity determination.

I. The Standard of Review

Pursuant to 28 U.S.C. § 1915A(a), a federal court is required to screen "as soon as practicable" a prisoner complaint "which seeks redress from a governmental entity or officer or employee of a governmental entity." Section 1915A(b) requires a federal court to dismiss a prisoner complaint that is either: (1)

"frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief."

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." *Id.* If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claim, then the complaint is subject to dismissal, pursuant to 28 U.S.C. § 1915A. *See Ashcroft v. Iqball*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (more than merely "conceivable," the "complaint must be dismissed" when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (the court accepts as true the plaintiff's factual contentions, not his or her legal conclusions that are couched as factual allegations).

2

## II. Plaintiff's Allegations

Plaintiff states that, on Saturday, September 26, 2009, while detained at the Hall County Jail, he was collecting lunch trays, and he went into the cell of detainee Kelvin Edwards in order to retrieve his lunch tray. (Pl's Comp. at 3.) Edwards allegedly hit Plaintiff over the head with a lunch tray with "extreme force." (*Id.*) Plaintiff states that Edwards informed him afterwards: "I told you I was gonna buss [sic] you up side your head!" (*Id.*) Plaintiff alleges that he "did not know what he [Edwards] was talking about or even why." Defendant Officer Lundis ordered Edwards "to back up into his cell," and Lundis placed himself between Edwards and Plaintiff. (*Id.*) Plaintiff alleges that he informed Lundis of Plaintiff's desire to press charges against Edwards, and Lundis stated that he would provide Plaintiff with the appropriate form. (*Id.*) In response, Plaintiff asked Lundis to press charges, and he agreed to honor Plaintiff's request. (*Id.* at 3-4.) In another portion of the complaint, Lundis allegedly informed Plaintiff that "Edwards was late getting his psych medications, but that gave him no reason to assault me [Plaintiff]." (*Id.* at 9.) Plaintiff, accompanied by Lundis and two other detainees, then continued collecting lunch trays and, after completing that task, cleaned windows. (*Id.* at 4.)

3

Approximately one-half hour after the incident, Defendants Lieutenant Seymore and Sergeant Underwood were speaking with Lundis. (*Id.*) Plaintiff informed Underwood and Seymore of the assault and asked that charges be pressed. (*Id.*) Seymore and Underwood then went to speak with Edwards. (*Id.*) Lundis allegedly informed Plaintiff that it was up to Seymore to press charges, and if he did not, Plaintiff could press charges after he was released. (*Id.*) Ultimately, Underwood decided not to bring charges against Edwards. (*Id.* at 6.) Due to Edwards making additional threats against Plaintiff, another detainee was directed to collect Edwards' lunch tray in the future. (*Id.* at 4.)

During the evening of Sunday, September 27, 2009, Plaintiff allegedly began experiencing "pain in the back of the neck and the base of the skull." (*Id.* at 4.) Plaintiff later alleges that he had a knot on his head. (*Id.* at 5.) Plaintiff informed Officer Cook of the pain, and he said we would inform the jail's medical department. (*Id.* at 4.) At approximately 2:30 A.M., Cook brought Plaintiff a medical request form. (*Id.* at 4-5.) Plaintiff turned in the medical request form later in the morning. (*Id.* at 5.)

On Tuesday, September 29, 2009, Plaintiff was examined by Defendant Linwood Zoller, a physician at the jail. (*Id.*) Plaintiff allegedly informed Zoller

4

of a sharp pain in Plaintiff's neck and previous numbness in his left arm which lasted for approximately one hour. (*Id.*) Plaintiff then asked Zoller to take x-rays, perform a CAT scan, and/or an MRI. (*Id.*) Plaintiff also requested a neck brace, a lay-in profile, pillow support, and pain medication. (*Id.*) Because Plaintiff was a federal detainee in the custody of the United States Marshal's Service, Zoller first needed to obtain authorization from the United States Marshal's Service before providing the requested examinations and treatment. (*Id.*) Later that day, Plaintiff was provided a muscle relaxer, which he initially thought was pain medication. (*Id.* at 6-7.) Allegedly, Plaintiff was told he would receive ICY HOT the next day, but he did not receive it until Friday, October 1, 2009. (*Id.* at 6, 8.)

On Tuesday, October 6, 2009, Plaintiff was provided with pain medication. (*Id.* at 17.) The next day, Zoller performed a "prick test for feeling sensation." (*Id.*) Zoller informed Plaintiff that the United States Marshal's Service had not yet approved the requested diagnostic examinations. (*Id.*) Approximately two and one-half hours after the examination, Plaintiff received a cervical collar. (*Id.*)

In his amendment, Plaintiff states that he was transferred to the Robert A. Deyton Detention Facility, which is a privately run detention center for federal detainees. (Pl's Amend. at 1.) At this facility, Plaintiff "underwent extensive

5

injury evaluation." (*Id.*) Plaintiff states that he was prescribed several medications for his neck injury. (*Id.*) Plaintiff also alleges that he was diagnosed with high blood pressure, and he claims it was caused by swelling in his neck. (*Id.*)

Plaintiff contends that Defendants violated his constitutional rights by (1) failing to file charges against Edwards, (2) failing to write an incident report, and (3) failing to take disciplinary action against Edwards. (Pl's Comp. at 11.) Plaintiff also claims that Defendants were deliberately indifferent to his serious medical need by (1) failing to provide emergency medical treatment, (2) failing to provide pain medication, (3) failing to provide adequate support, such as a neck brace and cervical pillow, in order to prevent his condition from being aggravated, (4) failing to treat symptoms as an emergency as described in the detention center's handbook, and (5) failing to provide adequate mental health care for Edwards. (*Id*.)

In his complaint, Plaintiff requested immediate medical treatment and comprehensive examinations, but that request was made prior to being treated at the Robert A. Deyton Detention Facility. (*Id.*) Plaintiff also asks this Court to order Defendants to provide full documentation of the assault by Edwards and to

AO 72A
(Rev.8/82)

file formal charges against him. (*Id.*) Finally, Plaintiff seeks money damages. (*Id.* at 12; Pl's Amend. at 2.)

III. Analysis

   A. Medical Care

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs. The deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment.[1] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). If jail officials delay or deny access to medical care or intentionally interfere with prescribed treatment, the Constitution is violated. *Id.* at 104-05. A finding of deliberate indifference is also appropriate when the medical care received by a prisoner is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

---

[1]Because Plaintiff was a pretrial detainee when he submitted this action, this claim should be analyzed under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *March v. Butler County, Alabama*, 268 F.3d 1014, 1024 n.5 (11th Cir.2001).

7

In order to establish deliberate indifference, a plaintiff must demonstrate that a "defendant actually knew of 'an excessive risk to inmate health or safety' and disregarded that risk." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Additionally, a plaintiff must demonstrate that a serious medical need exists. *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

Plaintiff does not allege that he suffered any obvious injury at the time of the attack, and he did not complain of pain or request medical treatment until the day after he was assaulted by Edwards. Plaintiff was then examined only one day later, and he was prescribed a muscle relaxer. Plaintiff does not allege any facts which would suggest that his condition worsened as a result of this brief delay. Plaintiff also fails to indicate that Defendants had the authority to conduct additional testing

8

and treatment until the United States Marshal's service authorized it. Although Plaintiff believes pain medication and a neck brace should have been provided sooner, a "difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ("the Constitution . . . does not guarantee to a prisoner the treatment of his choice"). While the muscle relaxer may not have cured Plaintiff's neck injury, it is apparent that Zoller prescribed it for that purpose. Even if Zoller's treatment had constituted medical malpractice, such negligence does not violate the Constitution. *Estelle*, 429 U.S. at 106. Plaintiff's allegations concerning the medical care he received do not state an actionable claim under § 1983.

### B. Failure to File Criminal Charges

Plaintiff complains that Defendants failed to have Edwards charged with aggravated assault or to have him disciplined. It is well-established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981) (internal quotation omitted). Therefore, Plaintiff is not entitled to have this Court order Defendants

9

to bring criminal charges against Edwards. With regard to disciplinary action against Edwards, prison and jail officials are "accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Wolfish*, 41 U.S. at 547; *Tally v. Stephens*, 247 F. Supp. 683, 686 (D.C. Ark. 1965) ("prison authorities must be given wide latitude and discretion in . . . the disciplining of inmates"). Consequently, this Court should not limit Defendants' discretion by ordering them to bring disciplinary charges against Edwards.

C. <u>Failure to Prevent Assault</u>

Plaintiff alleges that Defendants should be held liable for the assault by Edwards, because they were late giving him his mental health medication. First, Plaintiff does not allege that any of the named Defendants were responsible for providing the medication. Although Defendant Steve Cronic, the Hall County Sheriff, oversees the running of the jail, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotations

omitted). A supervisor is liable only when he or she "personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* Plaintiff has not pointed to any policy or custom established or enforced by Cronic which would provide a causal connection to Edwards allegedly receiving his medication late.

Even if one of the named Defendants had a duty to ensure that Edwards received his medication in a timely manner, Plaintiff has not alleged facts, which if proven, would show that Defendants were aware of a substantial risk of Plaintiff being attacked by Edwards, if his medication was not delivered in a timely manner, and ignored that risk. *See Farmer*, 511 U.S. at 834-37; *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) ("generalized awareness of risk . . . does not satisfy the subjective awareness requirement," and the "merely negligent failure to protect an inmate from attack does not justify liability under section 1983"). Plaintiff's allegations concerning the late delivery of Edwards' medication does not state a cognizable claim under § 1983.

IV. Conclusion

**IT IS ORDERED** that Plaintiff's motion to add party [3] is **GRANTED**. Plaintiff's motion for extension of time to file affidavit and authorization [13] is **GRANTED** *nunc pro tunc* to November 23, 2009. Plaintiff's motion for extension of time to file proper documents [14] is **GRANTED** *nunc pro tunc* to November 30, 2009. Plaintiff's motion to amend and motion for extension of time due to institutional lockdown [16] is **GRANTED** *nunc pro tunc* to December 21, 2009. The amended *pro se* civil rights action [1 and 16] is **DISMISSED**, pursuant to 28 U.S.C. § 1915A. For the purpose of dismissal only, Plaintiff's motion for leave to proceed *in forma pauperis* [2 and 15] is **GRANTED**. Plaintiff's motion for appointment of counsel [4], motion for order [18], and motion for summary judgment [19] are **DENIED AS MOOT**.

The Clerk of the Court is **DIRECTED** to add Hall County as a Defendant, and then to **CLOSE** the case.

**IT IS SO ORDERED**, this  27th  day of January, 2010.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

12